## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| OK SALES, INC., an Oklahoma corporation, | ) |
| | ) |
| Plaintiff, | ) |
| vs. | )          No.  08-CV-24-TCK-TLW |
| | ) |
| CANADIAN TOOL & DIE, LTD., | ) |
| a Canadian corporation, | ) |
| | ) |
| Defendant. | ) |

### OPINION AND ORDER

Before the Court is Defendant Canadian Tool & Die, LTD's Motion to Dismiss ("Motion to Dismiss") (Doc. 163), wherein Defendant Canadian Tool & Die, LTD ("CTD") moves to dismiss the action pursuant to Federal Rule of Civil Procedure 12(b)(1) ("Rule 12(b)(1)").

## I.    Background[1]

Plaintiff OK Sales, Inc. ("OKS") filed its Complaint in this Court on January 15, 2008.  OKS asserted federal subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(2), which requires the parties to be of complete diversity and the amount in controversy to exceed $75,000.   After extensive discovery and litigation, the parties filed their respective motions for summary judgment. On March 31, 2009, the Court issued a twenty-nine page Opinion and Order ("Order") ruling on the motions for summary judgment.   In sum, the Court (1) rejected CTD's defense that the relevant contract, referred to in the Order as the 2005 MRA, had expired; (2) rejected CTD's defense related to interpretation of the phrase "4 year period" in the 2005 MRA; (3) rejected CTD's defense that its performance was excused because OKS was in breach of the "internal grievance" language of the 2005 MRA; and (5) rejected CTD's proposed interpretation of "solicited" in the 2005 MRA.  Thus,

---

[1]    For a complete factual background, see 3/31/09 Opinion and Order (Doc. 154), which incorporated herein by reference.

OKS' claims for breach of contract, declaratory judgment, unjust enrichment, and accounting survived summary judgment. The Court also held, however, that OKS' claim for anticipatory repudiation failed as a matter of law based on OKS' full performance of the 2005 MRA.[2] Therefore, the Court ruled that OKS was only entitled to damages for partial breach, *i.e.*, those contract damages incurred through the date of trial. Specifically, the Court held:

> Under OKS' and the Court's interpretation of the 2005 MRA, OKS has fully performed under the 2005 MRA and no longer has the ability or authorization to solicit additional "orders" from Auto Crane that would entitle it to commissions under the 2005 MRA. As more fully explained in Part VIII below, any post-termination commissions to which OKS is potentially entitled were fully earned at the time it filed suit. In addition, the amount of payments potentially due to OKS are unknown until Auto Crane places the relevant "orders," rendering it impossible for the Court or jury to ascertain the amount of commissions due in the future. Therefore, CTD is entitled to summary judgment on OKS' claim for anticipatory repudiation, and OKS is limited to suing for damages (i.e., unpaid commissions) that have accrued at the time of trial.

(Order 22 (citation omitted).) As alluded in footnote 12 of the Order, if OKS succeeds on its claims, the Court anticipates a judgment on breach of contract damages incurred through the date of trial and some type of equitable relief or declaratory judgment governing future damages.[3] The principal question remaining for trial is how many, if any, "orders" have been placed from the date of termination through the date of trial that qualify OKS to commissions.

---

[2]   OKS' claim for anticipatory repudiation was not a separate claim for relief but was pled as part of OKS' first cause of action for breach of contract. (Compl. ¶ 15.)

[3]   In this regard, the Court followed the approach taken in a case presenting similar facts. *See Kozak v. Medtronic, Inc.*, No. H-03-4400, 2006 WL 5207231, at *2 (S.D. Tex. Sept. 26, 2006) (holding that, pursuant to Restatement (Second) of Contracts § 243(3), the plaintiff could not maintain a claim for anticipatory repudiation of a royalty contract and was "therefore entitled to recover his damages for a partial breach through the date of trial and additionally to obtain the declaration for which he prays that he is entitled to royalties on all future sales").

On April 7, 2009, the Court held a pretrial conference during which the Court ruled on several motions in limine and discussed trial dates.  During the pretrial conference, the parties discussed the possibility of stipulating to a bench trial.  Since that time, the parties notified the Court of their agreement to waive jury trial.  Also during the pretrial conference, Defendant's counsel informed the Court that it anticipated filing a motion to dismiss based on lack of subject matter jurisdiction, in light of the Court's rejection of Plaintiff's anticipatory repudiation claim.  Defendant filed such motion on April 13, 2009, and the motion became ripe on April 29, 2009.  A bench trial is scheduled for June 8 and 9, 2009.

## II.     Rule 12(b)(1) Standard

Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction generally take one of two forms.  *Stuart v. Colo. Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001).  "First, a moving party may make a facial attack on the complaint's allegations as to the existence of subject matter jurisdiction."  *Id.*  "In reviewing a facial attack, the district court must accept the allegations in the complaint as true."  *Id.*  "Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction is based."  *Id.*  "In reviewing a factual attack, a court has 'wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts.'"  *Id.* (quoting *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir.1995)). "In the course of a factual attack under Rule 12(b)(1), a court's reference to evidence outside the pleadings does not convert the motion into a Rule 56 motion."  *Stuart*, 271 F.3d at 1225.  Both parties have attached evidence outside the pleadings regarding the amounts of accrued commissions at various times in the litigation.  Thus, the Court construes the attack as factual.

3

### III.    Legal Certainty Rule

"The rule governing dismissal for want of jurisdiction in federal court is that, unless the law provides otherwise, the amount claimed by the plaintiff controls if the claim is apparently made in good faith." *Adams v. Reliance Standard Life Ins. Co.*, 225 F.3d 1179, 1183 (10th Cir. 2000). "It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." *Id.* "The burden is on the party asserting jurisdiction to show it is not a legal certainty that the claim is less than the jurisdictional amount." *Id.* Notably, the Tenth Circuit has explained that "it is difficult for a dismissal to be premised on the basis that the requisite jurisdictional amount is not satisfied" and "[t]here is a strong presumption favoring the amount alleged by the plaintiff." *Woodmen of World Life Ins. Society v. Manganaro*, 342 F.3d 1213, 1216 -17 (10th Cir. 2003). "Generally, dismissal under the legal certainty standard will be warranted only when a contract limits the possible recovery, when the law limits the amount recoverable, or when there is an obvious abuse of federal court jurisdiction." *Id.*

"The jurisdictional statutes require a valuation of the matter in issue by the reference to the amount 'in controversy.'" *Emland Builders, Inc. v. Shea*, 359 F.2d 927, 928-29 (10th Cir. 1966). An amount can only be "in controversy" if it is asserted by the plaintiff in good faith, "as jurisdiction cannot be conferred or established by colorable or feigned allegations solely for such purpose." *Id.* at 929. "If the amount becomes an issue . . ., the trial court must make a determination of the facts." *Id.* (emphasis added). "This initial determination of the facts and circumstances as they relate to good faith is made as of the time the jurisdictional allegations were made." *Id.*; *see also Taylor v. Sandoval*, 442 F. Supp. 491, 494-95 (D. Colo. 1977) ("Regardless of the date of an objection, the Court makes its determination of jurisdiction as of the date the action was commenced."); 14B

4

Charles Alan Wright, Arthur R. Miller, Edward H. Cooper, *Federal Practice and Procedure* § 3702 (3d ed. 1998) ["*Federal Practice*"] ("Under a well-settled principle . . . the existence or non-existence of the required amount in controversy is determined as of the time that an action is commenced in federal courts . . . .").

## IV.     Value of Amount in Controversy - Including Anticipatory Repudiation Claim

The Complaint alleges that the "matter in controversy exceeds the sum and value of Seventy Five Thousand Dollars ($75,000.00), exclusive of interest and costs." (Compl. ¶ 3.)  Specifically, as to Count One, the Complaint alleges that CTD

> has definitively and unequivocally stated its intent that it will not perform the [2005 MRA] at the time fixed for performance and will not pay the commissions due under the Agreement. [CTD's] statements and conduct constitute an anticipatory breach and repudiation of the [2005 MRA]. The commissions due and owing have not been paid and, therefore, [CTD] has breached the Agreement with respect to past due commissions. [OKS] has timely performed all of its obligations under the [2005 MRA]. [OKS] is entitled to damages based on [CTD's] breach of contract and/or anticipatory breach of contract in an amount in excess of $75,000. . . .

(Compl. ¶¶ 13-15.)  CTD does not argue that the assertion of the amount in controversy was made in bad faith or that there has been any abuse of federal court jurisdiction.[4]  Instead, CTD argues that, based on the Court's rejection of OKS' anticipatory repudiation claim at the summary judgment stage of the proceedings, "it is *now* clear that Plaintiff OKS cannot sustain its burden of

---

[4]     The Court finds nothing to suggest that OKS' claim for anticipatory repudiation was "colorable for the purpose of conferring jurisdiction" or asserted for any other bad-faith purpose. *Cf. City of Boulder v. Snyder*, 396 F.2d 853, 856 (10th Cir. 1968) ("[A] plaintiff's good faith in choosing the federal forum is vulnerable at any time during trial as well as prior thereto, and if it appears that a plaintiff *never was* entitled to recover the jurisdictional amount, and that his claim was therefore colorable for the purpose of conferring jurisdiction, the suit must be dismissed.") (holding that, at trial, "the highest opinion as to damage suffered by [the plaintiffs] was the sum of $3,000" and it "was thus a 'legal certainty' that plaintiffs [] could not, and under their own evidence, recover the amount requisite to support federal jurisdiction").

demonstrating that when this suit was commenced on January 15, 2008, the case satisfied the amount in controversy requirement."  (Mot. to Dismiss 2-3 (emphasis added).)  CTD contends that, based on the Court's summary judgment ruling, OKS' breach of contract claim did not, at the outset of the litigation, have a potential value exceeding the jurisdictional requirement.  CTD relied on *Parker v. Moitzfield*, 733 F. Supp. 1023, 1026-27 (E.D. Va. 1990), in which the court found that the plaintiff's claim for anticipatory repudiation was "facially defective" and that plaintiffs could not rely on such claim to satisfy the jurisdictional amount.  *See id.* ("[T]he absence of jurisdiction over facially invalid claims is not caused by any subsequent event; jurisdiction never actually exists when the facial defect prevents the claim from satisfying the requisite jurisdictional amount.").

The Court finds that, notwithstanding its summary judgment ruling, damages for total breach of the agreement were in fact "in controversy" at the outset of the litigation.  The Court's ruling on anticipatory repudiation was not based on any facial defects in the Complaint; the ruling was based on the summary judgment record and interpretation of various interrelated provisions of the 2005 MRA. Specifically, the holding was dependent, *inter alia*, on the Court's decisions that (1) the 2005 MRA had not altogether expired; (2) commissions were not contingent on post-termination actions by OKS; and (3) the obligation to pay commissions was not obviated by various other provisions of the 2005 MRA.  These rulings were contrary to CTD's arguments at the summary judgment stage. CTD is now contending that, based on the Court's ruling in its favor on the isolated issue of anticipatory repudiation, the anticipatory repudiation damages were never genuinely "in controversy."  However, had the Court accepted CTD's proposed interpretation of the contract – specifically, that OKS was required to continue "soliciting" orders post-termination in order to earn commissions –  OKS may have in fact been entitled to damages for anticipatory breach.  These

6

circumstances demonstrate that damages for anticipatory breach were genuinely "in controversy" at the outset of the litigation, despite the Court's later ruling. Accordingly, damages for anticipatory breach, which would have included the value of commissions through 2011 and unquestionably exceeded $75,000, may be included in determining the amount in controversy.

Although the Tenth Circuit has not discussed the impact of summary judgment rulings on the amount in controversy, the Court's holding is supported by authority from other circuits explaining that "[l]egal certainty is analyzed by what appears on the face of the Complaint; subsequent events – such as a valid defense offered by the defendant, or actual recovery of an amount less than the minimum jurisdictional amount – do not show a plaintiff's bad faith or oust the jurisdiction." *Wolde-Meskel v. Vocational Instruction Project Comm. Svcs., Inc.*, 166 F.3d 59, 63 (2d Cir. 1999) (reversing district court's dismissal of remaining claims following grant of summary judgment on breach of contract claim) (holding that, although grant of summary judgment to defendant on breach of contract claim reduced the amount in controversy, such ruling "did not establish the quite distinct proposition that the amount claimed was never in controversy" and that the face of the complaint was not "so patently deficient as to reflect to a legal certainty that he could not recover the amount alleged"); *see also Herremans v. Carrera Designs, Inc.*, 157 F.3d 1118, 1121 (7th Cir. 1998) (reversing district court's dismissal of remaining claims following grant of summary judgment in favor of defendant on one aspect of breach of contract claim) ("The test for whether a case satisfies the amount in controversy requirement is whether the complaint makes a good-faith claim for the amount, not whether the plaintiff is actually entitled to such an amount. Otherwise every diversity case that a plaintiff lost on the merits would be dismissed for lack of federal jurisdiction, allowing the plaintiff to start over in state court."); *Tongkook Am., Inc. v. Shipton*

*Sportswear Co.*, 14 F.3d 781, 785 (2d Cir. 1994) (explaining difference between a factual, pre-trial showing that plaintiff cannot, to a legal certainty, recover the statutory jurisdictional amount and a legal, pre-trial ruling in favor of defendant) (dismissing case where factual discovery made clear that maximum amount of plaintiff's recovery was less than jurisdictional amount); *cf. Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995) (holding that, when grant of summary judgment causes amount in controversy to fall below the jurisdictional amount, court may exercise "supplemental jurisdiction" over remaining claims); 14B *Federal Practice and Procedure* § 3702 ("[E]ven if part of the plaintiff's claim is dismissed on a motion for summary judgment, thereby reducing the plaintiff's remaining claims below the jurisdictional amount in controversy, the district court retains jurisdiction to adjudicate the balance of the claim.") (citing *Cahill*).

Here, as in *Wolde-Meskel* and *Herremans*, although dismissal of the anticipatory repudiation claim altered the jurisdictional amount in controversy as to the breach of contract claim from damages for "total breach" to damages for "partial breach," the Court cannot state that damages for "total breach" were never genuinely in controversy. As explained above, this was a difficult question that turned on the summary judgment record and the Court's numerous interpretations of the 2005 MRA. Accordingly, although CTD succeeded in defeating OKS' claim for anticipatory breach, damages for such claim may still be considered in determining the amount in controversy at the outset of the litigation.[5]

---

[5]     Alternatively, if the Tenth Circuit were to follow the Fourth Circuit's view that remaining claims may be retained based on a theory of supplemental jurisdiction, the Court hereby exercises its discretion to retain the case based on supplemental jurisdiction.

**V.      Value of Amount in Controversy - Omitting Anticipatory Repudiation Claim**

Even if the Court must ignore the "anticipatory repudiation" theory of Count One based on its summary judgment ruling, the Court still finds that OKS has shown that it is not a "legal certainty" that the value of the litigation did not, at the time of filing, exceed the jurisdictional amount. OKS has satisfied this burden in two ways: (1) by showing that the value of its partial breach of contract claim was not, to a legal certainty, below $75,000; and (2) by showing that the combined value of its partial breach of contract and declaratory judgment claims was not, to a legal certainty, below $75,000.

A.      Amount of Claim for Partial Breach

At the time suit was commenced on January 15, 2008, there existed $10,885.18 in unpaid commissions. (*See* "Commissions Claimed by OK Sales (Not Paid by CTD)," Exs. B-3 and B-4 to Supp. Decl. of Lyndon F.E. Finney, Ex. B to Mot. to Dismiss.)[6][7] Thus, as of the date of filing, OKS had not accrued sufficient damages to satisfy the jurisdictional amount. However, the question presented is not the amount of damages actually suffered on the date of filing; the question is whether OKS has shown that it was not a legal certainty, as of the date of filing, that it could not recover the amount in controversy. *See Adams*, 225 F. 3d at 1183. In making this determination,

---

[6]      While OKS may dispute the particulars of CTD's calculations, OKS does not contend that the unpaid commissions at the time of filing came close to $75,000.

[7]      CTD argues in its brief that no commissions were "overdue" at the time of filing and therefore the amount in controversy was zero. (Mot. to Dismiss 3.) However, upon review of the evidence supporting this statement, it is clear that relevant orders were placed by Auto Crane prior to the date of filing. The Court considers damages on these orders to have accrued on the date of order, rather than the date payment became due, because CTD had already declared that it would not pay any commissions following termination of the 2005 MRA. OKS had no reason to expect or await payment on such sales.

9

the Court may consider the evidentiary record presented on the motion to dismiss. *See Emland Builders, Inc.*, 359 F.2d at 929 (holding that, in determining whether a plaintiff has satisfied the legal certainty standard, a trial court should start "with the allegations in plaintiff's complaint" and should also "consider[] the circumstances then existing to decide the issue of good faith"); *Cabral v. Willard,* 333 F. Supp. 2d 1108, 1112 (D. Kan. 2004) (considering evidence that, following filing of the complaint, the plaintiff had incurred only $3,415.67 in medical bills and had not sought medical treatment for the past seven months, in support of the defendant's argument that a plaintiff could not satisfy the legal certainty standard); *Ardrey v. Fed. Kemper Ins. Co.*, 798 F. Supp. 1147, 1150 (E.D. Pa. 1992) (explaining that a plaintiff is "entitled to the benefit of facts that she could prove at trial" in satisfying the legal certainty standard).

OKS' damages expert, James Elliot ("Elliot"), has calculated that, as of October 31, 2008, CTD owed OKS unpaid commissions, excluding interest, in the amount of $79,035.22 (*See* Ex. B to Resp. to Mot. to Dismiss.)  The Court has ruled that OKS' damages for its partial breach of contract claim will include damages suffered through the date of trial.  (*See* Order 22.)[8]  Thus, this $79,035.22 represents the minimum amount of damages that will be sought by OKS at trial.[9]  Based on this evidence, OKS has shown the Court not only that (1) it is not a legal certainty that the amount in controversy for partial breach of the 2005 MRA was, as of the filing date, below $75,000, but also that (2) it is in fact a legal certainty that the amount in controversy, as of the date of filing,

---

[8]      In addition to the case cited in the Order, there is additional support for this holding.  *See Ind. Mich. Power Co. v. United States*, 422 F.3d 1369, 1376 (Fed. Cl. 2005) (explaining that, in cases of partial breach, a party may recover damages for nonperformance through the date of trial but may not recover damages for anticipated future nonperformance following trial).

[9]      Elliot calculated this figure over six months ago, and he is expected to update these accrued damages for purposes of trial.  (*See* Resp. to Mot. to Dismiss 6 n.4.)

exceeded $75,000. Indeed, it would seem illogical and futile to hold that OKS cannot satisfy its burden of proof as to the amount in controversy in this case. It is illogical because, even if the amount in controversy was somehow speculative or incapable of proof at the time suit was commenced, it is not overly speculative based on the evidence now presented in response to CTD's Motion to Dismiss. It is futile because, were the Court to dismiss the action, OKS could re-file the case tomorrow and establish federal jurisdiction. *See Lien v. v. H.E.R.C. Prod., Inc.*, 8 F. Supp. 2d 531, 534 (E.D. Va. 1998) (noting that, even if the court granted plaintiff's motion to remand, "it would likely amount to an exercise in futility since the defendant would likely again seek to remove the action prior to trial based on the cumulation of damages before trial").[10]

CTD's argument is based on the principle espoused in certain insurance and other contact cases that "[w]hen calculating the amount in controversy, the District Court will only consider the amount of damages that have accrued up until the point the case was filed." *See, e.g., Russ v. Unum Life Ins. Co.*, 442 F. Supp. 2d 193, 197 (cited by CTD) (D.N.J. 2006) (holding that, when rights at issue are insurance benefits already received or claimed to be owed, future payments may not be considered in calculating the amount in controversy).[11] However, this principle appears to be

---

[10]     Although judicial economy and other practical considerations are not relevant to the existence of subject matter jurisdiction, *see Basso v. Utah Power and Light*, 495 F.2d 906, 910 n.1 (10th Cir. 1974), OKS' ability to satisfy the legal certainty standard is strengthened by the current realities of this litigation.

[11]     Notably, the *Russ* court was not applying the "legal certainty" standard; it was applying the stricter standard that applies when a case is removed, which in that case required "an independent appraisal of the value of the claim by looking at the petition for removal or other relevant evidence." *Id.* at 197. Unlike a removing defendant, OKS need only show that it was not a legal certainty that the amount in controversy would fall below the jurisdictional minimum. *See Adams*, 225 F. 3d at 1183.

contrary to Tenth Circuit law regarding calculation of the amount in controversy.  Tenth Circuit law provides that a court may consider future contractual benefits in calculating the amount in controversy when a plaintiff alleges a "continuing breach."  *See Adams*, 225 F.3d at 1183-84 (adding value of past-due benefits and disputed future benefits in determining whether plaintiff's allegations satisfied the amount in controversy).  OKS seeks damages for precisely this type of "continuing breach," *i.e.*, CTD was in breach of the 2005 MRA when the case commenced and, based on CTD's ongoing relationship with Auto Crane, it would continue to breach the 2005 MRA every time Auto Crane placed a relevant "order" and CTD failed to pay a commission.  Under OKS' proposed contract interpretation, commissions were already earned based on OKS' past solicitation activities, and the only contingency was if and how many "orders" would be placed by CTD that triggered CTD's obligation to pay commissions.  Assuming OKS will prove its factual allegations, Auto Crane continued to place orders for a significant number of cylinders originally solicited by OKS, resulting in continuing breaches by CTD of the 2005 MRA.  Thus, the allegations of "continuing breach" are similar to those presented in *Adams,* and the Court finds it proper to consider the amount of accrued post-filing, pre-trial contractual damages in deciding whether OKS has satisfied the legal certainty standard.

B.  Amount of Claim for Partial Breach In Combination with Request for Declaratory Relief

In cases seeking declaratory relief, "the amount in controversy is measured by the value of the object of the litigation."  *Lovell v. State Farm Mut. Auto. Ins. Co.*, 466 F.3d 893, 897 (10th Cir. 2006).  The Tenth Circuit follows the "either viewpoint rule," which "considers either the value to the plaintiff or the cost to defendant of declaratory relief as the measure of the amount in controversy for purposes of meeting the jurisdictional minimum."  *Id.*  When considering whether to add the

12

value of declaratory relief to the amount in controversy, courts have held that the right to future payments may not be overly speculative. *See* 32A Am. Jur. 2d *Federal Courts*, § 994 ("[I]nclusion of future amounts due in the future appears to depend on whether the right of recovery of future payments exists at the time the action is brought and will be determined in the suit, or whether it is reasonably certain – also described as  probable as opposed to possible – that future increases or augmentations in the claim occur in the ordinary course of events."); *see also Russ*, 442 F. Supp. 2d at 198 (cited by CTD) (refusing to consider value of declaratory relief because the "value of [the plaintiff's] rights under the policy after he turns 65 is only speculative," given his then-age of 59 years and the lack of repudiation or any other assurances by the insurer that it would fail to pay benefits when the plaintiff reached the proper age); *Ardrey*, 798 F. Supp. at 1150 (refusing to consider value of declaratory relief because decision of whether to pay commissions was solely within discretion of defendant).

OKS' second cause of action seeks a declaration of CTD's "obligation to pay commissions" and states that such a declaration would require CTD "to pay commissions to [OKS] that exceed the sum and value" of $75,000.  (Compl. ¶¶ 18-19.)  Thus, the value of the declaratory relief is the amount of commissions to which OKS may be entitled, based on the Court's declaration as to the rights of the parties.  As evidenced by Elliot's testimony, the cost to CTD of granting the requested declaratory relief was not, to a legal certainty, less than $75,000.  This is true whether the post-filing, accrued damages are considered recovery on the breach of contract claim or whether the post-filing, accrued damages are considered recovery on the declaratory judgment claim.

The Court further concludes that these post-filing, accrued damages are not overly "speculative." Unlike the defendants in CTD's cited cases, CTD clearly stated its intent not to pay

post-termination commissions in December 2007, prior to OKS' filing suit in January 2008.  This declaration by CTD was based on its interpretation of the 2005 MRA (which the Court has since held to be in error).  When the declaratory relief was sought by OKS, there was no question that CTD would fail to pay the commissions that are the object of this litigation; the "declaratory" question was whether there existed an obligation to pay the commissions and, if so, in what amount.[12]  The Court finds that the future payments sought by the declaratory relief portion of OKS' Complaint were not so contingent or speculative that they must be excluded from determining the amount in controversy.  *See Intercon Research Assocs., Ltd. v. Topcon Corp.*, No. 95 C 419, 1995 WL 535104, at **2-5 (N.D. Ill. Sept. 1, 1995) (holding that value of declaratory relief was sufficient to confer federal jurisdiction in case in which defendant had declared its refusal to continue making incentive payments to the plaintiff, and the defendant had an ongoing relationship with the client that, according to the plaintiff, triggered the incentive payments).[13]  Accordingly, the potential value of OKS' claim for declaratory relief may be added to the $10,885.18 in pre-filing accrued damages, and the total value of these two claims exceeds the jurisdictional amount.

---

[12]   OKS' claim for anticipatory repudiation failed because OKS had fully performed, not based on a finding that CTD never actually repudiated the contract.  (*See* Order 19-22.)

[13]   It is true that commissions only come due upon a relevant "order" by Auto Crane, and the existence and amount of such "orders" remains to be determined at trial.  However, it was certainly not overly speculative at the time of filing that the amount of commissions at issue would exceed $75,000.

**VI.     Conclusion**

OKS has shown that it was not a legal certainty that, at the time suit was filed, its claims would never exceed the jurisdictional amount.  This conclusion is based on three holdings.  First, damages for anticipatory breach of the 2005 MRA were "in controversy" at the outset of the litigation, and it was not a legal certainty that such damages would never exceed the jurisdictional amount.  Second, even if the Court were to exclude damages for anticipatory breach from the amount in controversy, it was not a legal certainty at the outset of the litigation that damages for partial breach would never exceed the jurisdictional amount.  This is evidenced by Elliot's calculations of post-filing, accrued damages.  Finally, even if the Court were to exclude both anticipatory breach damages and post-filing, accrued damages from the amount in controversy, it was not a legal certainty at the outset of the litigation that damages for partial breach, combined with the value of the requested declaratory relief, would never exceed the jurisdictional amount.  Accordingly, CTD's Motion to Dismiss (Doc. 163) is DENIED.

**IT IS SO ORDERED** this 27th day of May, 2009.

**TERENCE KERN**
**United States District Judge**

15